FAX or Internet

# UNITED STATES DISTRICT COURT

## for the

## District of Arizona

In the Matter of the Search of

**Cell Phone Number 520-424-5325,**
**AT&T Records**

)
)
)
)
)

Case No.  21-4269mb

## ELECTRONICALLY ISSUED SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer.

        An electronic application by a federal law enforcement officer for the government requests the search
of the following person or property located in the    Southern                District of    Florida
*(identify the person or describe the property to be searched and give its location)*:  **See Attachment A.**

        I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or
property described above, and that such search will reveal:  **See Attachment B.**

        **YOU ARE COMMANDED** to execute this warrant on or before

                                                    September 24, 2021
                                                    *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10 p.m.      ☒ at any time in the day or night as I find reasonable cause has been
                                              established.

Unless delayed notice is authorized below, you must give a copy of the search warrant and a receipt for the property
taken to the person from whom, or from whose premises, the property was taken, or leave a search warrant copy and
receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an
inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
 Any U.S. Magistrate Judge in the District of Arizona  .
                    *(Name)*

        ☐ I find that immediate notification may have an adverse result as specified in 18 U.S.C. § 3103a  (except for delay
of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be
searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30).*
                                                ☐ until, the facts justifying, the later specific date of
                                                   _____.

Date and Time Issued: _____          **Camille D. Bibles** Digitally signed by Camille D. Bibles
                                                                            Date: 2021.09.10 14:06:36 -07'00'
                                                            *Judge's Signature*

City and State:   Flagstaff, Arizona                  Camille D. Bibles, United States Magistrate Judge

| Return | | |
|---|---|---|
| Case No.: 21-4269mb | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing Officer's Signature*

_____
*Printed Name and Title*

## **ATTACHMENT A**

## **DESCRIPTION OF THINGS TO BE SEARCHED**

This search warrant applies to information associated with cellular telephone number 520-424-5325, which is stored at the premises owned, maintained, controlled, or operated by AT&T Mobility LLC ("AT&T"), also known as AT&T Wireless, a Delaware Company headquartered in Texas.  AT&T's compliance center is in N. Palm Beach, Florida.  AT&T is registered to do business in the State of Arizona with the Arizona Corporation Commission, and it has customers and does business in the State of Arizona.

**ATTACHMENT B**
**THINGS TO BE SEARCHED FOR AND SEIZED**
**FROM THE SUBJECT ACCOUNT**

The items to be searched for and seized, which are associated with cellular telephone number **520-424-5325**, are as follows:

1.      Names (including subscriber names, user names, and screen names).

2.      Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses).

3.      Local and long-distance telephone connection records from August 29, 2020 through September 4, 2020.

4.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ["IP"] addresses) associated with those sessions, from August 29, 2020 through September 4, 2020.

5.      Length of service (including start date) and types of service(s) utilized.

6.      Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identifiers ("IMEI"); Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address).

1

7.      Means and source of payment for such service (including any credit card or bank account number) and billing records.

8.      All records and other information relating to the account, including:

a.      All text message content currently stored from August 29, 2020 through September 4, 2020.

b.      All usage data to include Call Detail records, SMS detail, cell site and cell site sector information from August 29, 2020 through September 4, 2020;

c.      All available toll records to include call detail, SMS detail, data session, cell site and cell site sector information, round trip delay information including RTT/PCMD data from August 29, 2020 through September 4, 2020;

d.      Records of user activity for each connection made to or from the account, including log files; messaging logs; the date, time, length and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses from August 29, 2020 through September 4, 2020; and

e.      Any other indicia of use (not listed above) of the account, including reference to anyone's names who may have used the account (e.g., information in the texts or phone numbers associated with the account), subscriber information pertaining to the account and/or identifiers, payment information, or other unique identifiers for or associated with the account), from August 29, 2020 through September 4, 2020.

FAX or Internet

# UNITED STATES DISTRICT COURT

### for the
### District of Arizona

In the Matter of the Search of:

|  |  |  |
|---|---|---|
| **Cell Phone Number 520-424-5325,** | ) | Case No.  21-4269mb |
| **AT&T Records** | ) | |
| | ) | |
| | ) | (Original To Be Filed With Court) |

## ELECTRONIC APPLICATION FOR SEARCH WARRANT

I, the undersigned, a federal law enforcement officer, request an electronic search warrant and state under penalty of perjury that I have reason to believe that on and within the following person or property:
**See Attachment A.**
located in the ___Southern___ District of ___Florida___, there is now concealed:
**See Attachment B.**
The basis for the search under Fed. R. Crim. P. 41(c) is:

[X] evidence of a crime;

[ ] contraband, fruits of crime, or other items illegally possessed;

[ ] property designed for use, intended for use, or used in committing a crime;

[ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| _Code Sections_ | _Offense Descriptions_ |
|---|---|
| 18 U.S.C. 111 | Assault on a Federal Officer |
| 36 C.F.R. 261.10(m) | Failure to Stop when Directed |

The application is based upon the following facts:

[X] Continued on the attached sheet (see attached **Affidavit**).

[ ] Delayed notice of _____ days (give exact ending date if more than 30 days) days: is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by: _/s AUSA Paul V. Stearns_
**Pursuant to 28 U.S.C. §1746(2), I declare under penalty of perjury that the foregoing is true and correct.**

_Applicant's Signature_

Executed on __September 9, 2021__

Robbert Todd Shelton, LEO, USFS
_Printed Name and Title_

__X__ Sworn by Telephone
Date/
Time: _____

Camille D. Bibles

Digitally signed by Camille D. Bibles
Date: 2021.09.10 14:06:04 -07'00'

_Judge's Signature_

City and State:  Flagstaff, Arizona

Camille D. Bibles, United States Magistrate Judge
_Printed Name and Title_

## **ATTACHMENT A**

### **DESCRIPTION OF THINGS TO BE SEARCHED**

This search warrant applies to information associated with cellular telephone number 520-424-5325, which is stored at the premises owned, maintained, controlled, or operated by AT&T Mobility LLC ("AT&T"), also known as AT&T Wireless, a Delaware Company headquartered in Texas. AT&T's compliance center is in N. Palm Beach, Florida. AT&T is registered to do business in the State of Arizona with the Arizona Corporation Commission, and it has customers and does business in the State of Arizona.

**ATTACHMENT B**
**THINGS TO BE SEARCHED FOR AND SEIZED**
**FROM THE SUBJECT ACCOUNT**

The items to be searched for and seized, which are associated with cellular telephone number **520-424-5325**, are as follows:

1.     Names (including subscriber names, user names, and screen names).

2.     Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses).

3.     Local and long-distance telephone connection records from August 29, 2020 through September 4, 2020.

4.     Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ["IP"] addresses) associated with those sessions, from August 29, 2020 through September 4, 2020.

5.     Length of service (including start date) and types of service(s) utilized.

6.     Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identifiers ("IMEI"); Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address).

1

7.     Means and source of payment for such service (including any credit card or bank account number) and billing records.

8.     All records and other information relating to the account, including:

a.     All text message content currently stored from August 29, 2020 through September 4, 2020.

b.     All usage data to include Call Detail records, SMS detail, cell site and cell site sector information from August 29, 2020 through September 4, 2020;

c.     All available toll records to include call detail, SMS detail, data session, cell site and cell site sector information, round trip delay information including RTT/PCMD data from August 29, 2020 through September 4, 2020;

d.     Records of user activity for each connection made to or from the account, including log files; messaging logs; the date, time, length and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses from August 29, 2020 through September 4, 2020; and

e.     Any other indicia of use (not listed above) of the account, including reference to anyone's names who may have used the account (e.g., information in the texts or phone numbers associated with the account), subscriber information pertaining to the account and/or identifiers, payment information, or other unique identifiers for or associated with the account), from August 29, 2020 through September 4, 2020.

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

## **ELECTRONICALLY SUBMITTED AFFIDAVIT**

The undersigned states under oath as follows:

1.      Your affiant, Robert Todd Shelton, is a Federal Law Enforcement Officer of the United States Forest Service ("USFS"), and he is currently assigned to the Coconino National Forest in the District of Arizona.  Your affiant has been employed as a law enforcement officer by the USFS for approximately nine years. Your affiant previously worked as: (a) a U.S. Park Ranger for the National Park Service; (b) an Arizona State Parks Assistant Park Manager/Law Enforcement Ranger; and (c) as a Deputy Sheriff for Maricopa County Sheriff's Office in the State of Arizona.  For the last 18 years, your affiant has experience investigating natural and historical resource related crimes, watercraft violations, motor vehicle traffic violations including driving under the influence of alcohol or drugs, controlled substance violations, firearms violations and criminal activity involving violent crimes against people and/or wildlife. Your affiant has attended two federal police academies, a state police academy for Arizona, and has completed multiple trainings and classes regarding the investigation of motor vehicle operation crimes as a State and Federal Officer.

2.      The information contained in this affidavit is based upon your affiant's personal knowledge, training, experience, as well as information provided by other

1

law enforcement officers and witnesses including those listed herein. Your affiant has not included every fact known to him concerning this investigation. Your affiant has only set forth the facts necessary to establish probable cause to support issuance of the requested search warrant.

## Introduction

3.      This case involves an incident that occurred in the Coconino National Forest, in the District of Arizona, with Joseph Edward Winar ("WINAR"). WINAR is believed to be a 34-year old male. The incident occurred on or about August 29, 2020. In short, on that date, your affiant was on duty and observed WINAR operating his silver 2008 Toyota 4Runner, bearing Arizona license plate CCOL6152, at an unsafe and high rate of speed. During this encounter, WINAR drove directly at your affiant, causing your affiant to jump out of the way. WINAR then fled and failed to stop for your affiant, and he subsequently failed to stop for a Coconino County Sheriff's Deputy and another USFS law enforcement officer.

4.      This affidavit is in support of an application for a search warrant to search information associated with an AT & T cellular phone account used by WINAR, and the proposed search warrant seeks evidence of violations of Title 18, United States Code, Section 111(a), Assault on a Federal Officer, and Title 36 Code of Federal Regulations, Section 261.10(m), failing to stop a vehicle when directed to do so by a Forest Officer.

5.      Specifically, this search warrant applies to information associated with cellular telephone number/account 520-424-5325, which is stored at the premises owned, maintained, controlled, or operated by AT&T Mobility LLC ("AT&T"), also known as AT&T Wireless, a Delaware Company headquartered in Texas. AT&T's compliance center is in N. Palm Beach, Florida. AT&T is registered to do business in the State of Arizona with the Arizona Corporation Commission, and it has customers and does business in the State of Arizona. *See also* Attachment A. The things to be searched for and seized are described below and specifically in Attachment B.

6.      Your affiant confirmed with AT &T that phone number 520-424-5325 is an AT & T account/phone number. Your affiant later sent AT & T a preservation request.

## Investigation

7.      On August 29, 2020, at approximately 1644 hours, while conducting fishing regulations patrol, your affiant observed a silver Toyota 4Runner sport utility vehicle (SUV), with a rear mounted motorcycle rack, hauling a green Kawasaki dirt bike mounted on a back-hitch rack. The SUV was being driven at a high rate of speed, throwing dust and rocks in the air, heading north on National Forest System Road (NFSR) 82E in the Ashurst Lake developed recreation site on the Flagstaff Ranger District, Coconino National Forest, Coconino County, in the District of Arizona.

8.     Your affiant, who was in his USFS law enforcement uniform, walked over to his patrol truck parked at the boat ramp and drove over to contact two fishermen standing at their truck parked along the westside of NFSR 82E and the entrance to the boat ramp and campgrounds.  Both fishermen said they were just hit with rocks thrown by the silver Toyota 4Runner, which sped by them heading towards the backside of the lake. Your affiant was talking to the fisherman with his driver's side window open, sitting in a fully marked USFS law enforcement patrol truck facing north on NFSR 82E, when your affiant and the fisherman observed the 4Runner approaching at a high rate of speed.  The 4Runner was heading south on NFSR 82E. Your affiant asked the fishermen whether that was the same SUV that was speeding and throwing rocks a few minutes ago, and the fishermen said yes.

9.     Your affiant set his USFS Kustom Talon Radar to stationary mode and aimed it at the oncoming 4Runner.  Your affiant observed the radar display 40 mph; it then increased to 44 mph as the 4Runner came closer.  Your affiant drove forward a few feet on NFSR 82E and activated the emergency lights and siren on his marked patrol truck in an attempt to conduct a traffic stop on the 4Runner.  The 4Runner started to swerve right, left, and right again in the single lane gravel road heading directly towards your affiant.

10.     The 4Runner stopped abruptly a few feet short of your affiant's patrol vehicle, and the wheels on the 4Runner turned toward your affiant's direction as your affiant exited his patrol truck's driver seat in an attempt to contact the driver of

4

the 4Runner.   Your affiant believed that the 4Runner was going to ram your affiant or his patrol truck.  Your affiant jumped away from his patrol truck.

11.    Your affiant observed an approximately 30-40-year-old white male, medium build, with brown hair, in the 4Runner.  The white male threw his hands up in the air gesturing for your affiant to get out of his way.  The driver of the 4Runner then revved his engine and peeled out, driving to the passenger side of my patrol truck.  He hit and ran over the road edge barrier rocks and accelerated at a high rate of speed throwing rocks and gravel as he fled southwest on NFSR 82E.

12.    Your affiant notified the Coconino County Sheriff's Office (CCSO) dispatch that the 4Runner failed to yield and drove away at a high rate of speed down NFSR 82E.  Your affiant pursued the 4Runner west on NFSR 82E.  Your affiant had the emergency lights and siren activated on his USFS patrol vehicle.   At the beginning of the pursuit, a green Kawasaki dirt bike (i.e., motorcycle) fell off a rack on the rear of the 4Runner.  The motorcycle fell into the middle of NFSR 82E, and it was partially blocking the roadway.  The motorcycle was bearing Arizona license plate WMCX1F.

13.    Your affiant later requested assistance from CCSO deputies in identifying the owner of the Kawasaki dirt bike.  Deputy Ormsby conducted a record's check of the motorcycle, and it was found to be a 2006 Kawasaki KLX250 (Arizona license plate WMCX1F) registered to Joseph Edward WINAR out of Casa Grande, Arizona. A reverse vehicle registration records check by CCSO dispatch

5

indicated WINAR owned a 2008 Toyota 4Runner bearing AZ license plate CCL6152, which matched the 4Runner that fled as described above.

14.    Your affiant continued to follow the 4Runner, which was traveling at a high rate of speed, and it failed to yield. On NFSR 82E, the vehicle reached speeds of over 60 mph, as indicated on your affiant's radar display. The 4Runner then ran the stop sign at the intersection of NFSR 82E and National Forest System Highway (NFSH) 3 and Lake Mary road. The 4Runner turned left, headed south on NFSH 3 and accelerated at a high rate of speed to 96+ mph. Your affiant paced the 4Runner over 17 miles, until losing sight of it at the intersection of NFSH 3 and NFSR 213. Your affiant observed dust and turned onto NFSR 213/Stoneman Lake Road where your affiant contacted a subject riding an UTV who said he did not see any 4Runner or silver SUV pass him.

15.    USFS LEO Ramsey Thompson and CCSO Deputy Himes said they observed the 4Runner speed past them heading southbound on NFSH 3 at milepost 306. They attempted to catch up with the 4Runner, which was traveling at over 100 mph. Deputy Himes observed the 4Runner, bearing AZ license plate CCL6152, driving on NFSR 196 and attempted to make a traffic stop by activating lights and siren in a fully marked CCSO patrol SUV. The 4Runner failed to yield and fled down NFSR 196 to NFSR 9368M. Your affiant, along with Deputy Himes, CCSO Cpl. Waibel, and LEO THOMPSON, attempted to locate WINAR and the 4Runnder but were unsuccessful at that time.

16.     NFSR 82E is a USFS-maintained road that is rough rocky gravel.  The road is only suitable for low speeds, as it has sharp turns and blind corners.  The road conditions at the time were dry and dusty.

17.     NFSH 3 is a USFS- maintained double-lane asphalt paved road with traffic control markings.  It has a posted speed limit of 50 mph and cautionary signs for passenger cars.

18.     CCSO Deputy Ormsby was contacted by Deborah Nipress at Ashurst Lake.  She informed Deputy Ormsby that she had an adult Hispanic female, accompanied by a young Hispanic female juvenile in her car, and they were looking for WINAR in his silver 4Runner.  The adult Hispanic female refused to identify herself except as Joseph WINAR's girlfriend. WINAR's girlfriend told Deputy Ormsby that WINAR was upset.  She said that they got into an argument, and he then drove away in his 4Runner from the campground area.  WINAR was reportedly intoxicated, and he left his girlfriend and the juvenile female at the campground. WINAR's girlfriend said he was the only one in the 4Runner.

19.     CCSO Cpl. Waibel contacted WINAR's girlfriend, who was sitting in Nipress's car with a female child who was approximately 10 years old.  Cpl. Waibel asked WINAR's girlfriend what her name was. She refused to provide her name or identification.  Cpl. Waibel asked WINAR's girlfriend how long she and WINAR had been together. WINAR's girlfriend said four years and held up four fingers. Cpl. Waibel asked her if WINAR was drinking today.  WINAR's girlfriend nodded her

head and said "yes."  The juvenile female told Cpl. Waibel something to the effect of, "He just left us, we were trying to go back to the 4Runner because he told us to meet him at the 4Runner and then he just took off."  Cpl. Waibel asked WINAR's girlfriend if he was driving a 2008 4Runner, and she said yes.  Cpl. Waibel asked WINAR's girlfriend whether he was the only person driving the 4Runner, and she said yes.  Cpl. Waibel asked WINAR's girlfriend why he would run from the police. WINAR's girlfriend said something to the effect of, "People don't like the police. I don't like police."  Cpl. Waibel asked WINAR's girlfriend if she had any phone contact with WINAR and if she knew his phone number.  WINAR's girlfriend said she did not know his number and that her phone was in the 4Runner.  WINAR's girlfriend told Cpl. Waibel something to the effect of, "I really don't know, all I know is 520-424-4 something."

20.    Your affiant contacted Arizona Department of Public Safety State Trooper Sgt. Damgaard, and he provided two driver's license photos of WINAR. They were dated 03/05/2018 and 11/25/2015.  The photos of WINAR were the subject your affiant observed fleeing in the Toyota 4Runner from Ashurst lake (as described above).

21.    On August 30, 2020, WINAR called CCSO dispatch to report his 4Runner stolen.  According to his report, CCSO Cpl. Sales was to contact the reporting party, WINAR, on the phone number of 520-424-5325.  According to Cpl. Sales' report, WINAR had called dispatch to report that the vehicle he was driving

8

yesterday (August 29, 2020) was stolen.   According to Cpl. Sales' report, he telephoned WINAR at the telephone number provided by dispatch (520-424-5325). Cpl. Sales told WINAR he needed to come into the sheriff's office to talk to a detective and make his stolen report about his 4Runner in person.   As of this affidavit, WINAR has not come into the CCSO to discuss the matter.

22.    On August 29, 2020, the Kawasaki KLX 250 dirt bike was towed from NFSR 82E by Economy Towing and impounded by USFS LEO Whitehair as evidence.  WINAR called Economy Towing on attempting to get his Kawasaki KLX 250 dirt bike returned to him.  WINAR provided the phone number of 520-424-5325 to Economy Towing.  According to Andy Fisher at Economy Towing, WINAR repeatedly called in an attempt to retrieve the Kawasaki dirt bike.  Fisher said that they told WINAR that the USFS had custody of the dirt bike.

23.    On September 3, 2020, at approximately 1700 hours, USFS LEO Ramsey Thompson and your affiant responded to a report of an abandoned silver 4Runner stuck on a ledge of Long Valley Creek at the end of NFSR 9368M on the Mogollon Rim Ranger District, Coconino National Forest. (The area where the 4Runner was found abandoned is approximately three to four road miles from where a CCSO deputy last observed it on August 29, 2020.  It is also the same road where the 4Runner was last observed fleeing on August 29, 2020.) Upon our arrival, your affiant observed the 4Runner high-centered on a rock with tires stuck in ruts.  A gear oil drip line was observed on the forest floor, leading off NFSR 9368M over a

recently scarred large rock towards a leak observed on the 4Runner's four-wheel drive transfer case. A record check on the attached Arizona license plate CCL6152 indicated the 4Runner was registered to Joseph WINAR. Your affiant conducted an abandoned vehicle investigation by taking photographs and attempting to detect or lift any latent fingerprints from the access points of the 4Runner. All the doors to the 4Runner were locked. All the windows were closed. No keys were located. No damage was observed to the steering column, dash, or center console. There was no registration or proof of insurance with the vehicle. Your affiant looked in the center console and glove box for any documentation. Both the center console and glove box were empty. Camping equipment, including an ice chest, folding camp chairs, tent, camp kitchen supplies, and miscellaneous camping gear, were organized and stowed in the rear seat and rear cargo areas and appeared to be undisturbed. A Tow Truck towing performed a vehicle lockout service to gain entry into the 4Runner. WINAR's 4Runner was inventoried and towed as evidence.

24.     On November 22, 2020, your affiant submitted a cellular phone records preservation request to AT&T for phone number 520-424-5325. Your affiant later requested that the preservation request be extended.

25.     As of this affidavit, WINAR has not attempted to retrieve his Kawasaki dirt bike from the USFS, and he has not retrieved his 4Runner from Economy Towing.

26.     On June 2, 2021, Special Agent Coda Witt attempted to contact WINAR via telephone.  No one answered the call.  On August 5, 2021, your affiant attempted to contact WINAR via telephone.  No one answered the call.

## **Things to Be Searched for and Seized**

27.     Your affiant is seeking a search warrant to obtain and search the AT&T cellular phone records associated with phone/account number 520-424-5325.  This is the phone number that was used by Joseph WINAR to contact the Coconino Sheriff's Office and Economy Towing a few days after the pursuit described above. WINAR attempted to report his Toyota 4Runner as stolen and to obtain his Kawasaki KLX from impound located in the property and evidence facility of the Coconino National Forest's Mormon Lake Work Center, in Flagstaff, Arizona.1

28.     Based on experience and training, your affiant believes that the information contained in the cellular telephone records associated to AT&T phone number 520-424-5325, and AT&T's cellular tower information, may identify

---

1 Based on my research, your affiant knows that the vast majority of Americans – more than 97% – now own a cellphone of some kind.  *See* https://www.pewresearch.org/internet/fact-sheet/mobile/ (last visited on May 2021).  Your affiant also knows that many people who access the United States forests use a variety of devices (e.g., cell phone, smart phones, GPS devices) to navigate and communicate in the forests.  Indeed, based on your affiant's experience, it is rare to find someone in the forest who does not have a cellular device of one kind or another.  Thus, it is reasonable to believe that WINAR had his cellular phone with him while he was fleeing the police as described above.  Additionally, based on field experience, your affiant knows that there is cellular service in the area where WINAR was observed by your affiant and other officers as described above.

WINAR's locations at and around the times of the assault and pursuit described above. Furthermore, it is believed that information stored in connection with AT&T phone number 520-424-5325 may provide information about the use of the phone (e.g., phone calls, text messages, and/or photographs) before, during, and/or after the pursuit. Such information may provide evidence and/or corroboration of who was using the phone, it may provide information about the pursuit itself, and it may provide the location or information about the area where the phone number was used.

29. Your affiant is aware, based upon experience and training, that evidence contained in the call detail records (CDR) as well as the cellular tower information may identify suspect(s) and is likely to be developed by analyzing information gleaned from the cellular phone activity during the time-period(s) before, during, and after the assault and pursuit. These items include toll records to include CDRs, SMS detail, data session, cell site location, cell site sector information, and round trip delay location (RTT/PCMD) data.[2] Your affiant is requesting these records, further described in Attachment B, to include (among other

---

[2] Based on your affiant's training and experience, it is also known that indicia of ownership, possession, and/or use is important in a criminal case. This is especially true here where the actual cellular device (phone) related to the account (phone number) has not been recovered. Such information may help (among other things) identify and/or corroborate ownership, use, and/or possession of the phone or use of the account in question. Such indicia may include things as names used in conjunction with the account (e.g., information in the texts or phone numbers associated with the account). Indicia also may include subscriber information pertaining to the account and/or identifiers, payment information, or other unique identifiers for the associated with the account.

things) names and addresses associated with the account or phone number, as well as specific items described in Attached B for the period beginning on August 29, 2020 through September 4, 2020.3

30.    It is believed that the contents sought in the search warrant are stored at premises owned, maintained, controlled, or operated by AT & T.

31.    Based upon your affiant's training, experience, and observations, your affiant submits that there is probable cause to believe that violations of federal law have occurred and that there is evidence of the violations, specifically Title 18, United States Code, Section 111(a) and Title 36, Code of Federal Regulations, Section 261.10(m), contained within the AT&T account used by WINAR, phone number 520-424-5325 (as further described in Attachment A).    Your affiant respectfully requests that a search warrant be issued for the things described in Attachment B.

32.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States (including a magistrate judge of such a court) that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

---

3 Where applicable, some of the things to be searched for and seized are limited in time to the period of August 29, 2020 through September 4, 2020.  However, other things in Attachment B – such as names, addresses, and payment information – are not limited.

13

33.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on AT&T. Because the warrant will be served on AT&T, which will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

**Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct to the best of my knowledge and belief.**

9-9-2021
_____
Executed on (Date)

_____
Robert Shelton, LEO, USFS

__X__ Sworn by Telephone

Date/Time:_____

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2021.09.10 14:05:27 -07'00'

Camille D. Bibles
United States Magistrate Judge

14